IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 1:14-CR-0177-03 |
| | : | |
| v. | : | |
| | : | (JUDGE CALDWELL) |
| DANILO VARGAS, | : | |
| DEFENDANT | : | (ELECTRONICALLY FILED) |

## SENTENCING MEMORANDUM

**I.    INTRODUCTION**

Danilo Vargas will come before this Honorable Court on October 14, 2015, for sentencing. The Defendant recognizes that his offense is serious and requires the appropriate attention of this Court. However, the Defendant does make some legal objections to the conclusions and penalties recommended in the PSR. The Defendant provides this memorandum in support of those objections and asks that the Court sentence him based upon accurate and reliable information and that his sentence be no greater than necessary to achieve the goals of sentencing under §3553(a).

**II.    The Defendant Is Entitled to Be Sentenced on the Basis of Accurate and Reliable Information**.

The Defendant submits that he is entitled to be sentenced on the basis of accurate and reliable information and that he is entitled to resolution of all disputed matters. The United States Supreme Court has made clear that there is a due process right to be sentenced on the basis of accurate information. <u>United States v.</u>

Tucker, 404 US 443 (1972).  In fact, the "sole interest of the defendant in sentencing is the right not to be sentenced on the basis of inaccurate or unreliable information."  United States v. Lopez, 898 F2d 1505,1512 (11th Cir. 1990).

Specifically, the Defendant would draw this Honorable Court's attention to Paragraph 30 of the PSR at Page 8.  While the Defendant was charged with Reckless Endangerment, Criminal Possession of a Forged Instrument in Bronx, NY, he was ultimately convicted of Criminal Possession Stolen Property – 5th Degree Misdemeanor.  Since this discrepancy did not impact the actual criminal history computation, a formal objection was not made to the PSR.  However, the Defendant does believe it important for the Court to have accurate information concerning the actual charge for which he was convicted.

**III.    The Defendant Should Not Be Sentenced Pursuant to Application Note 4(F)(i) to U.S.S.G. §2B1.1, as there was not any use or actual loss associated with the 62 counterfeit access devices possessed.**

In relevant part, **Application Note (F)(i)** reads as follows:

> *(*F)    Special Rules.—Notwithstanding subdivision (A), the following special rules shall be used to assist in determining loss in the cases indicated:
> (i)    Stolen or Counterfeit Credit Cards and Access Devices; Purloined Numbers and Codes.—In a case involving any counterfeit access device or unauthorized access device, *loss includes any unauthorized charges made* with the counterfeit access device or unauthorized access device and shall be not less than $500 per access device. (emphasis added).

Based upon the plain language of this Special Rule, it appears the intent is to

set a minimum loss of at least $500.00 for each counterfeit access device where *any unauthorized charges are made*. Regardless of the intended application, the Defendant should not be punished for conduct that did not occur.

In this case, the 62 counterfeit access devices were merely possessed, never used, and, thus, no unauthorized charges were made. Beyond the Base Offense Level of six (6), the Defendant's relevant conduct, possession of 62 counterfeit access devices, is accounted for incident to the increase of four (4) levels attributed to Specific Offense Characteristics of 50 or more victims plus an additional two (2) levels per USSG §2B1.1(b)(11)(C)(ii).

Accordingly, the Defendant submits that he should not receive a six-level enhancement to his base offense level, as it unduly punishes him. Absent this enhancement, the Defendant's guideline imprisonment range is ten (10) to sixteen (16) months. To date, the Defendant has served more than fourteen (14) months in jail (incarceration date: July 31, 2014) and respectfully request that this Honorable Court consider imposing a time-served sentence.

**IV.   This Court Should Consider the Advisory Guidelines along with All Relevant Factors under 18 U.S.C. §§3553(a) and 3661 in Determining a Sentence That Is No Greater than Necessary to Achieve the Purposes of Sentencing.**

As this Court is aware, in <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory guideline system created by the Sentencing Reform Act of 1984 (SRA) was unconstitutional. Therefore, the appropriate

remedial measure was to declare the Guidelines merely advisory. See Booker, 125 S. Ct. at 757 (2005) (Breyer, J.). After Booker, federal sentencing is vastly different. Treating the Guidelines as advisory requires that the Court consider the guideline range calculation as merely one of many factors in determining a sentence *no greater than necessary to achieve the goals of sentencing* set forth in 18 U.S.C. §3553(a)(2).

### A. The §3553(a) Sentencing Mandate

Section 3553(a) is comprised of two distinct parts: the so-called "sentencing mandate" contained in the prefatory clause of Section 3553(a) and the "factors" to be considered in fulfilling that mandate. The overriding mandate of §3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary," to comply with the four purposes of sentencing set forth in Section 3553(a)(2): (a) retribution; (b) deterrence; (c) incapacitation; and (d) rehabilitation. United States v. Yeaman, 248 F.3d 223 (3d Cir. 2001).

The sufficient-but-not-greater-than-necessary requirement is often referred to as the "parsimony provision." The parsimony provision is not just another "factor" to be considered along with the others set forth in Section 3553(a). Instead, it sets an independent limit on the sentence a court may impose. See United States v. Flores, 454 F.3d 149 (3d Cir. 2006). Since §3553(a) requires sentence to be no greater than necessary to meet four purposes of sentencing, imposition of sentence

greater than necessary to meet those purposes is reversible, even if within Guideline range.  Id.

In determining the sentence minimally sufficient to comply with the Section 3553(a)(2) purposes of sentencing, the court must consider several factors listed in Section 3553(a). These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims.

United States v. Istrefi, 280 Fed. Appx. 217(3d Cir. May 23, 2008). While district courts must in all cases "consider" the Guideline range, United States v. Booker, 543 U.S. 220, 245-46 (2005), the Guidelines do not subordinate the other factors in §3553(a).  Rather, it is the parsimony provision that serves as "the guidepost for sentencing decisions post-Booker." United States v. Ferguson, 456 F.3d 660, 667 (6th Cir. 2006).

Sentencing courts have a duty to consider many factors that the Guidelines specifically exclude from consideration – even factors prohibited by the formerly mandatory Guidelines – in determining the type of sentence that satisfies the

sentencing mandate of §3553(a). See, United States v. Ausburn, 502 F.3d 313 (3d Cir. 2007) (declining to address whether sentences within the Guidelines range were per se reasonable, holding that as long as the sentence complied with 18 U.S.C. §3553(a), the sentence was reasonable).

The sentencing judge, after considering §§3553(a) and 3661 factors (including the Guidelines), has full discretion to sentence anywhere within the statutory range. If the Booker Court thought otherwise – if it thought the Guidelines not only had to be 'considered' (as the amputated statute requires) but had generally to be followed – its opinion would surely say so. Booker, 125 S. Ct. at 791 (Scalia, J., dissenting). Likewise, if the remedial majority thought the Guidelines had to be given "heavy weight," its opinion would have said so. The remedial majority clearly understood that giving any special weight to the Guideline range relative to the other factors would violate the Sixth Amendment. A sentence may be unreasonable if it is the product of a procedure that does not follow Booker's requirements, regardless of the actual sentence. After a district court has accurately calculated the Guideline range, it may impose a more severe or more lenient sentence as long as the final sentence is reasonable. Ausburn, *supra*; United States v. Cooper, 437 F.3d 324, 327-28 (3d Cir. 2006).

**B.     Mitigating Factors to Be Considered in Determining a Reasonable Sentence Under 18 U.S.C. §3553(a)(2).**

As set forth above, after Booker, this Court is statutorily required to impose a sentence that is minimally sufficient to accomplish the purposes of sentencing, and the Guidelines are only one of five equally important factors to be considered in determining the minimally sufficient sentence.  In the instant case, a sentence at the statutory minimum is sufficient to satisfy the goals of (1) retribution, (2) deterrence, (3) incapacitation, and (4) rehabilitation.  Imposition of sentence greater than necessary to meet those purposes is reversible, even if such a sentence falls within the Guideline range.

**1.     The Defendant's Remorse, Contrition, Desire for Rehabilitation, and Age.**

Today, the Defendant stands before this Court humbled, remorseful, and contrite.  The Defendant recognizes that the conduct for which he was convicted is wrong and has previously entered his plea of guilty accepting responsibility for the same.  The Defendant stands before this Court ashamed for this conduct and ashamed that he has caused harm to his loved ones.  The Defendant desperately wants to achieve a total rehabilitation so that he never again becomes involved in this type of conduct again.

Even when the Guidelines were mandatory, post-offense rehabilitation and the facilitation of the administration of justice were permissible grounds for a

downward departure. United States v. Rudolph, 190 F.3d 720, 722-23 (6th Cir 1999); United States v. Fagan, 162 F.3d 1280, 1284-85 (10th Cir. 1998); United States v. Garcia, 926 F.2d 125 (2nd Cir. 1991); United States v. Volpe, 224 F.3d 72 (2nd Cir. 2000) (noting that activities facilitating the proper administration of justice may form the basis for a downward departure).  After the Guidelines were made advisory, this conduct becomes even more important at sentencing.

Remorse is also a factor the Court must consider.  United States v. Fagan, 162 F.3d 1280, 1284-85 (10th Cir. 1998).  Under the old departure analysis, "[b]ecause remorse is not a prohibited factor, but a factor already considered in the Sentencing Guidelines, a sentencing court may depart downward if it finds that remorse is present to an exceptional degree." Now that the Guidelines are merely advisory, these factors are relevant in determining a reasonable sentence after Booker under §3553(a).

Based on the above, the Defendant respectfully asks that this Court take these factors into consideration under §3553(a) in determining a sentence that is no greater than necessary.

### 2. The Poor Conditions of Confinement

The Defendant has been incarcerated for more than a year in this matter.  The Defendant has been detained since date of his Arraignment on July 31, 2014.  At that time, he was immediately detained at Dauphin County Prison.  During this

time, the conditions of confinement have been onerous. The amount of time the Defendant has spent in jail and the onerous conditions of that jail are mitigating factors independent of the Guidelines that this Court should consider under §3553(a).

Prior to Booker, several courts have recognized that a district court has the authority to consider the extraordinary conditions of pretrial confinement at sentencing. United States v. Carty, 264 F.3d 191, 196 (2nd Cir. 2001) (remanded for re-sentencing so that the district court could consider whether pretrial conditions of confinement of a federal defendant warranted a downward departure at sentencing). See also, United States v. Brinton, 139 F.3d 718, 725 (9th Cir. 1998), overruled on other grounds by United States v. Nordby, 225 F.3d 1053 (9th Cir. 2000); United States v. Sutton, 973 F.Supp. 488 (D.N.J. 1997), aff'd, 156 F.3d 1226 (3rd Cir. 1998) (unpublished table decision) (affirming that after Koon v. United States, 518 U.S. 81 (1996), substandard jail conditions is a permissible basis for a downward departure); United States v. Francis, 129 F.Supp.2d 612, 616 (S.D. NY 2001) (holding that conditions of confinement below those in federal institutions provide grounds for a departure under U.S.S.G. §5K2.0.).

Of course, now that the Guidelines are advisory, this Court can consider pretrial confinement conditions independent of the Guidelines under §3553(a). "Unusual pretrial confinement, in either length or severity of condition, can

properly be considered by the sentencing court. ... [T]he "hardship" of pretrial detention, if sufficiently atypical, can serve as a basis for a downward departure." United States v. Sutton, *supra*. Although departure based on grounds not mentioned in the Guidelines should be infrequent, departures should rarely be ruled out on a categorical basis. Sutton, 973 F.Supp at 492. In the context of pretrial confinement, the Court looks at the length of the confinement and the nature of this confinement. Id. at 494.

In United States v. Hernandez-Santiago, 92 F.3d 97, 101 n.2 (2nd Cir. 1996), the Second Circuit affirmed the district court's decision to depart downward "because the defendant had been incarcerated for 22 months – since the day of his arrest in September 1993 to the time of sentencing – in a state facility, [which was] in the district court's view a "harsher incarceration" than federal imprisonment because of its lack of educational and therapeutic programs."

In the instant case, the Defendant has been incarcerated for more than a year under sub-standard conditions. More specifically, the Defendant was incarcerated at Dauphin County Prison from July 31, 2014, until March 11, 2015, at which time he was transferred to Perry County Prison where he has been detained to date. Further, the following conditions make incarceration at the Dauphin County Prison ridiculously onerous: (1) inmates are given only one uniform per week; (2) food servers do not wear gloves or hair nets; (3) inmates are forced to eat in a cell,

where the cramped conditions force one inmate to eat while sitting on the toilet; (4) inmates defecate in the cell while other inmates are eating; (5) the library cart only comes once a month and has a non-rotating inventory of only 200 books; (6) only one child may visit with an adult behind the glass; (7) no televisions are located on the cell blocks; (8) the bunk beds and desks within the cells are rusted; (9) there is peeling and chipped paint in each cell; (10) the fail is infested with mice and roaches; (11) the Defendant is not permitted fresh air or outdoor recreation; (12) the jail does not have unlimited access to the legal library and the library only has two computers for research; (13) showers are only permitted at a specific time, regardless of how badly a shower may be needed earlier; (14) the toilet leaks and only can be flushed once every five minutes; (15) the sink does not drain properly; (16) there is a lack of fresh air being circulated due to clogs in the vents; (17) many of the guards are racist; (18) overcrowding requires inmates to sleep in the corridors and forces two inmates to share a cell meant to house a single inmate; (19) expired food is served; (20) the entire jail is forced into lock down whenever any single disciplinary event occurs, due to overcrowding; (21) the shower area has mold on the walls, clogged drain, and a total of six showers for eight inmates; (22) lights are on twenty-four hours per day; and (23) there is a seventy-two hour waiting period for maintenance to look into a complaint.  During this time, the Defendant has been incarcerated with murderers, rapists, and other violent

criminals. Thus, as was the case in Hernandez-Santiago, *supra*, the length of time spent in jail, and the particularly harsh conditions of the Defendant's pretrial confinement, are factors this court should take into consideration under §3553(a) in determining the appropriate sentence.

Accordingly, the Defendant requests that this factor be considered in issuing a sentence that is sufficient but not greater than necessary to achieve the ends of sentencing.

### 3.   Imposition of Concurrent or Consecutive Sentences

The Defendant's Sentence in this matter should be run concurrent to any other sentences he may receive incident to it.

In Paragraph 61 of the PSR at Page 13, probation has recommended that the sentence imposed by the Honorable Court in this matter be run consecutive to any anticipated state probation revocations.  As noted in the authority outlined in the PSR, federal courts have discretion in imposing such sentences concurrent or consecutive.

In this instance, any state probation violations and subsequent sentences will occur incident to the conduct and sentence in this case, not the other way around. Additionally, his prior conduct has already been accounted for in the computation of his sentencing guidelines.  Accordingly, the Defendant respectfully request that this Honorable Court run this case concurrent and allow the state court's to

separately impose sanctions arising from the conduct herein.

## VIII. CONCLUSION

The Defendant asks that this Court make factual findings and conclusions regarding each of the above arguments and objections.  Further, regardless of whether this Court finds the guideline range in the PSR to be accurate, such a penalty range is greater than necessary, to achieve the goals of sentencing under 18 U.S.C. §3553(a).  Accordingly, the Defendant respectfully requests that this Court take into consideration the above factors and sentence the Defendant to the lowest term sufficient to achieve the goals of sentencing under §3553(a)(2).

Respectfully Submitted,

Dated: October 6, 2015         By: **/s/ Shawn M. Curry**
                                   Shawn M. Curry, Esquire
                                   SHAWN CURRY LAW
                                   PA ID No. 202061
                                   2411 North Front Street
                                   Harrisburg, PA 17110
                                   Phone:  (717) 525-8733
                                   Fax:  (717) 695-2878
                                   Email:  shawn@shawncurrylaw.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 1:14-CR-0177-03 |
| | : | |
| v. | : | |
| | : | (JUDGE CALDWELL) |
| DANILO VARGAS, | : | |
| DEFENDANT | : | (ELECTRONICALLY FILED) |

### CERTIFICATE OF SERVICE

I, Shawn M. Curry, Esquire, counsel for Danilo Vargas, hereby certify that I have served the foregoing Sentencing Memorandum on the following by email:

**Kim Daniel, AUSA**
**Counsel for the United States**
**kim.daniel@usdoj.gov**

Respectfully Submitted,

Dated: October 6, 2015                By: **/s/ Shawn M. Curry**
                                       Shawn M. Curry, Esquire
                                       SHAWN CURRY LAW
                                       PA ID No. 202061
                                       2411 North Front Street
                                       Harrisburg, PA 17110
                                       Phone: (717) 525-8733
                                       Fax: (717) 695-2878
                                       Email: shawn@shawncurrylaw.com